IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERALD ULIBARRI,

      Plaintiff,

v.                                                                                            No. CIV 16-00215 RB/WPL

SOUTHLAND ROYALTY CO., LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Certify Dispositive Questions of Law to the New Mexico Supreme Court, filed on May 2, 2016 (Doc. 15). Having considered the submissions of counsel and relevant law, the Court will **DENY** Plaintiff's motion.

**I.    Background**

This putative class action arises out of a disagreement between Plaintiff, who owns a royalty interest in natural gas wells in New Mexico, and Defendant, a company that produces natural gas pursuant to lease agreements with Plaintiff. Defendant incurs certain costs to put the natural gas into a condition in which Defendant can sell it to third party buyers; these costs are called "post-production costs." Plaintiff argues that Defendant has an implied duty under the "marketable condition rule" to bear these post-production costs without deducting such costs from Plaintiff's royalties. Defendant has been deducting a proportionate share of these post-production costs, including a share of a tax called the natural gas processors tax [NGPT], from Plaintiff's royalty payments. Plaintiff asks this Court to certify questions to the New Mexico Supreme Court to decide the parties' obligations with respect to the post-production costs and the tax specifically.

Plaintiff, a resident and citizen of New Mexico, owns an interest in natural gas wells located in New Mexico. (Compl. ¶ 3.) Defendant, a Delaware limited liability company with its principal place of business in Texas, produces the natural gas from the wells and is responsible for putting the gas into a marketable condition to sell to third party purchasers. (*Id.* ¶ 4; Docs. 15 at 2; 16 at 3.) Since January 1, 2015, Defendant has contracted with a third party company—Enterprise Field Services, LLC [Enterprise]—to process the natural gas Defendant produces from the wells in order to make the gas marketable. (Compl. ¶ 20; Doc. 15 at 2.) Plaintiff is not a party to the contract between Defendant and Enterprise. (Compl. ¶ 20.) Defendant pays Enterprise a proportionate share of post-production costs (those costs Enterprise incurs in the gathering, extraction, dehydration, compression, and other services it renders in order to process the gas and place it in marketable condition). (*Id.* at ¶ 27; Doc. 15 at 3.)

One of the costs Defendant shares in is a state privilege tax. Pursuant to New Mexico's Natural Gas Processors Tax Act [the Act], the state levies "a privilege tax on processors for the privilege of operating a natural gas processing plant in New Mexico." N.M. Stat. Ann. § 7-33-4(A) (1978); *see also* § 7-33-1. This tax is known "as the 'natural gas processors tax.'" § 7-33-4(A). A "'processor' means a person who operates a natural gas processing plant . . . ." § 7-33-2(I). Enterprise, the company that processes the natural gas for Defendant, is a processor under the Act and pays the NGPT to the state. (Compl. ¶ 20; Doc. 15 at 2.) As part of its contract with Enterprise, Defendant pays a proportionate share of the NGPT. (Compl. ¶ 21; Doc. 15 at 2.)

Defendant then deducts a proportionate share of both the post-production costs and the NGPT from the royalties it pays to Plaintiff. (Compl. ¶¶ 22, 30; Doc. 15 at 3.) Plaintiff alleges that his Royalty Agreements with Defendant do not authorize such deductions. (Compl. ¶ 17; Doc. 15 at 2.) Moreover, Plaintiff contends that Defendant has "an implied duty to make [gas from the

2

wells] a 'marketable product' [by] gathering, compressing, dehydrating, and otherwise treating the" gas without passing that cost onto Plaintiff. *Davis v. Devon Energy Corp.*, 218 P.3d 75, 78 (N.M. 2009). (*See also* Compl. ¶¶ 27, 29, 31.) Plaintiff further believes that the state privilege tax, Section 7-33-4(A), only permits payment by those who qualify as "processors" under the Act, and owners of interest in natural gas are not subject to payment of or liability for the tax. (Compl. ¶ 23; Doc. 15 at 3.) Defendant denies any wrongdoing and asserts that there is no support for Plaintiff's position. (*See* Doc. 21.)

Plaintiff seeks to have two questions certified to the New Mexico Supreme Court. For purposes of the Court's analysis, the first question is:

> 1. Whether under the marketable condition rule, [Defendant] has the implied duty to market the natural gas produced from [Plaintiff]'s wells, which requires [Defendant] to bear the costs in placing the natural gas in a marketable condition without deducting such costs from [Plaintiff]'s royalties?

(Doc. 15 at 1.) Second, Plaintiff asks:

> 2. Whether under New Mexico's Natural Gas Processors Tax Act, . . . Defendant . . . is permitted to deduct a proportionate share of the amounts it paid for New Mexico's natural gas processors tax in its calculation and payment of royalties to [Plaintiff]?

(*Id.*) Plaintiff believes he has met all prerequisites for certification pursuant to N.M. Stat. Ann. § 39-7-4 (1978) and N.M. R. App. P. 12-607(A)(1)(a) (2004)). (Doc. 15 at 3–5.) Defendant disagrees and asserts that not only does Tenth Circuit precedent prevent this Court from certifying these questions to the supreme court, even if it could, the issue is not yet ripe for review. (Doc. 21 at 3–8, 11–14.)

The Tenth Circuit precedent Defendant refers to is the decision in *Elliott Industries Ltd. Partnership v. BP American Product Co.*, 407 F.3d 1091 (10th Cir. 2005). In *Elliott*, "the Tenth

Circuit addressed various obligations that oil-and-gas lessors owe the royalty interest owners on their leases" and found that the marketable condition rule is not supported by New Mexico case law. *Anderson Living Tr. v. WPX Energy Prod., LLC* (*ALT v. WPX*), 27 F. Supp. 3d 1188, 1219–20 (D.N.M. 2014). Since the Tenth Circuit decided *Elliott*, Plaintiff asserts, the New Mexico Supreme Court has issued three decisions that call *Elliott* into question. (Doc. 15 at 8–9 (discussing *Davis*, 218 P.3d 75; *ConocoPhillips Co. v. Lyons* (*Lyons*), 299 P.3d 844, 860 (N.M. 2012); *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362 (N.M. 2010)).) Were this Court to follow *Elliott*, Plaintiff maintains, it would "directly contradict" these recent supreme court decisions "and violate the fundamental principles of the *Erie* doctrine . . . ." (*Id.* at 5 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).) Plaintiff believes the only way around such a result is to certify these questions to the New Mexico Supreme Court. (*Id.*)

This is the third such motion brought before this district court. Judge Browning denied a motion to certify a question about the marketable condition rule in *Anderson Living Trust v. ConocoPhillips Co.* (*ALT v. Conoco II*),[1] No. 12-CV-00039 JB/SCY, 2013 WL 11549178 (D.N.M. Sept. 18, 2013), and Judge Johnson denied a similar motion in *Anderson Living Trust v. Energen Resources Corp.* (*ALT v. Energen I*), No. 13-CV-00909 WJ/CG (D.N.M. Nov. 25, 2014). It is no coincidence that this issue is being raised now before a third judge, because there are connections between the three cases: Defendant "is a successor-in-interest to Energen Resources Corporation[, t]he leases and wells at issue in the instant case are a subset of the same leases and wells at issue in *ALT v. Energen*[, and] Plaintiff and the putative class members in the instant case are also putative class members in *ALT v. Energen*." (Doc. 21 at 4 (citing Doc. 16 at 5).) Additionally,

---

[1] The Court will refer to Judge Browning's cases generally as *ALT v. Conoco* and *ALT v. WPX*, and to Judge Johnson's case generally as *ALT v. Energen*, but it will number the opinions by date and refer to the numbers in the case citations.

counsel for the plaintiffs in *ALT v. Conoco* are almost identical to counsel for plaintiffs in *ALT v. Energen*. It will come as no surprise to Plaintiff, then, that the Court denies his motion for the same reasons as those so persuasively articulated by Judges Browning and Johnson in their earlier opinions.

## II.     Legal Standard

"Under the Uniform Certification of Questions of Law Act, the New Mexico Supreme Court may answer a question of law certified to it if the 'answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.'" *Hartford Ins. Co. of the Midwest v. Cline*, 367 F. Supp. 2d 1342, 1344 (D.N.M. 2005) (quoting § 39-7-4). "In addition to the question of law to be answered . . . , an order of certification must contain[] 'the facts relevant to the question, showing fully the nature of the controversy out of which the question arose . . . .'" *Hartford Ins. Co. of the Midwest*, 367 F. Supp. 2d at 1345 (quoting § 39-7-7(A)(2)); *citing* Rule 12-607). "The intent of the certification of facts and the determinative answer requirements is that [the New Mexico Supreme Court] avoid rendering advisory opinions." *Id.* (quoting *Schlieter v. Carlos*, 775 P.2d 709, 710 (N.M. 1989)). "The submitted facts must be sufficiently nonhypothetical and evidentiary." *Id.* (citing *Schlieter*, 775 P.2d at 711).

"Federal courts have the option of determining what a state court would do if confronted with the same issue, *see Erie* . . . , 304 U.S. [at] 78, . . . or of certifying the question to the state appellate court for review, *see Allstate v. Stone*, 863 P.2d 1085, 1086 (N.M. 1993) ('This matter comes before us by way of certification from the United States District Court for the District of New Mexico.')." *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272, 1280 (D.N.M. 2006) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974) ("The decision to certify a

question to the state supreme court 'rests in the sound discretion of the federal court.'")). The Tenth Circuit cautions that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citation omitted). Indeed, "federal courts have the duty to decide questions of state law even if difficult or uncertain . . . ." *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (citation omitted). When the Court can "see a reasonably clear and principled course, [it] will seek to follow it" without troubling the state court. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (citations omitted).

### III. Discussion

Plaintiff's two main contentions are: (1) Defendant has an implied duty to market, which includes a requirement, based on the marketable condition rule, to bear all post-production costs it incurs in placing the natural gas in a marketable condition without deducting such costs from its calculation and payment of royalties to Plaintiff; and (2) Defendant is not permitted under Section 7-33-4 to deduct a proportionate share of the amount it paid for the NGPT from its calculation and payment of royalties to Plaintiff. (Doc. 15 at 1.) The Court will look at each issue in turn, beginning with the marketable condition rule.

### A. The Court will not certify Plaintiff's question concerning the marketable condition rule.

"New Mexico has long recognized 'an implied covenant on the part of'" oil-and-gas producers to use reasonable diligence to produce and market the product, "having in mind [the producer's] own interest as well as that of the" owners of any royalty interests. *Elliott*, 407 F.3d at 1113 (quoting *Libby v. DeBaca*, 179 P.2d 263, 265 (N.M. 1947)). This covenant, "characterized [as] the implied duty to market[,]" is defined "as an 'implied covenant to make diligent efforts to

market the production[,]'" having in mind the interests of both parties. *Id.* (quoting *Darr v. Eldridge*, 346 P.2d 1041, 1044 (N.M. 1959) (internal quotations omitted)). Plaintiff argues that the implied duty to market includes not only the covenant to diligently market production, but also the "marketable condition rule," which prohibits Defendant from charging Plaintiff any portion of the costs to make production marketable. *See Davis*, 218 P.3d at 79. (*See also* Compl. ¶¶ 27, 29, 31; Doc. 15 at 8–9.)

Before any court can consider the issue of whether the implied duty to market includes the marketable condition rule in New Mexico, the court must first consider whether the contract at issue includes any duty to market. Covenants such as the "implied duty to market" may be implied into contracts in law or in fact. *See Davis*, 218 P.3d at 85; *Lyons*, 299 P.3d at 859–60. "An implied covenant in fact springs from the language of the parties' agreement." *Lyons*, 299 P.3d at 859–60 (citing *Davis*, 218 P.3d at 85). "Thus, by implying a covenant in fact, a court is 'effectuating the parties' intentions by interpreting the written terms of an agreement and analyzing the parties' conduct.'" *Lyons*, 299 P.3d at 860 (quoting *Davis*, 218 P.3d at 85). "An implied covenant at law, however, has its origins not in the parties' agreement, but rather in law." *Id.* (citing *Davis*, 218 P.3d at 85). "Thus, by implying a covenant at law, a court is 'stating that a duty imposed by law creates an obligation on one or more of the parties to the agreement.'" *Id.* (quoting *Davis*, 218 P.3d at 85).

The Tenth Circuit was the first appellate court to decide whether the implied duty to market exists in fact or at law. *See Elliott*, 407 F.3d at 1114; *see also ALT v. WPX*, 27 F. Supp. 3d at 1219 ("Perhaps because the Tenth Circuit construed *Elliott* . . . before the Supreme Court of New Mexico's pronouncement in *Davis* . . . that the duty to market is implied 'in equity,' . . . the Tenth Circuit interpreted New Mexico law to imply the duty to market only in fact . . . ."). The Tenth

Circuit based its interpretation of the rule on *Continental Potash, Inc. v. Freeport–McMoran, Inc.*, 858 P.2d 66, 80 (N.M. 1993), finding New Mexico law implied "the duty to market only in fact, based upon 'whether any implied duty to market was intended by the parties or would contradict the express provisions of that agreement.'" *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1022 (D.N.M. 2013) [*ALT v. Conoco I*] (quoting *Elliott*, 407 F.3d at 1113 (citing *Cont'l Potash, Inc.*, 858 P.2d at 80 ("no implied covenants when subject matter addressed in contract"))). In other words, the Tenth Circuit in *Elliott* found there was no support under New Mexico law to imply the marketable condition rule into a contract in equity. *Id.*

The New Mexico Supreme Court later determined the exact opposite. In *Davis*, the supreme court held that any duty to market was implied into the parties' contract by law. *Davis*, 218 P.3d at 85, 86. Consequently, the producer was bound by the duty "regardless of the parties' intentions." *Id.* at 85 (citing *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) ("stating that the implied covenant of good faith and fair dealing is implicit in every contract")). The *Davis* court noted that the *Continental Potash* court, relied upon by the Tenth Circuit in *Elliott*, had failed to make clear the distinction between covenants implied in fact and in law; further, the *Davis* court held that the analysis in *Continental Potash* "does not apply to covenants that impose legal duties upon contracting parties as a matter of law." *Davis*, 218 P.3d at 85 (citing *Cont'l Potash*, 858 P.2d at 80–82). Specifically, the *Davis* court held that "*Continental Potash* is inapplicable to the implication of the marketable condition rule[,]" which is implied "in equity, without looking to the language of the agreements or other evidence of the parties' intentions." *Id.* at 85, 86 (citing *Darr*, 346 P.2d at 1044).

Notably, while the *Davis* case assumed that the marketable condition rule applied in that case, the supreme court expressly declined to make such a holding for New Mexico contracts in

general. *Id.* at 80 ("For the purposes of our review, we accept this interlocutory ruling of the district court as applicable in each case, and we do not address the existence of the marketable condition rule in New Mexico or its applicability in any of these cases.") Rather, the court accepted the district court's ruling that "the marketable condition rule applies in New Mexico" and declined to address the substantive issue of whether the marketable condition rule actually applies as a rule in the state. *Id.* The supreme court reviewed a similar issue in *Ideal v. Burlington Resources Oil and Gas Co.* and again declined to find any general rule in New Mexico; instead, it remanded "to the district court to resolve whether the marketable condition rule" applied as a matter of law or fact. 233 P.3d at 365. The supreme court cited *Davis* favorably in *Lyons* but was able to dodge the question again, because the issue of "whether the marketable condition rule applies in New Mexico [was] not yet ripe for review."[2] 299 P.3d at 859–60. Consequently, the question is still open—according to the New Mexico Supreme Court—on whether the marketable condition rule applies in New Mexico.[3] *Id.*

Plaintiff argues that certifying the question regarding the marketable condition rule is proper and necessary to both resolve this question of state law and, if the supreme court were to find that the marketable condition rule is implied as a matter of law, to ensure that the right of royalty owners to be paid the full amount of their royalties is protected. (Doc. 15 at 10.) Plaintiff hopes this Court will give him a different result than that obtained in the two previous motions to certify similar questions. *See ALT v. Energen I*, No. 13-CV-00909 WJ/CG (D.N.M. Nov. 25,

---

[2] Because the supreme court was construing a contract where the State of New Mexico was the lessor, the supreme court noted that the *Lyons* "opinion should not be interpreted as affecting private oil and gas leases." *Lyons*, 299 P.3d at 860.

[3] As Judge Browning noted in *ALT v. Conoco*, "[f]rom the time that the Tenth Circuit" decided *Elliott*, "at least three New Mexico district courts have found that, 'under the implied duty to market, the marketable condition rule applies in New Mexico.'" *ALT v. Conoco I*, 952 F. Supp. 2d at 1025 n.7 (quoting *Davis*, 218 P.3d at 80 (citing *Davis v. Devon Energy Corp.*, 180 P.3d 1181; *Ideal v. BP Am. Prod. Co.*, 180 P.3d 1182; *Smith v. ConocoPhillips Co.*, 180 P.3d 1182)). The issue has not yet been ripe for review by the New Mexico Supreme Court.

2014); *ALT v. Conoco II*, 2013 WL 11549178. Plaintiff will be disappointed. As Judge Johnson pointed out, "the court took pains to set out an analysis indicating its disagreement with the Tenth Circuit regarding whether its holding was a correct statement of New Mexico law" in *ALT v. Conoco*. *ALT v. Energen I*, No. 13-CV-00909 WJ/CG, Doc. 67 at *18 (D.N.M. Nov. 25, 2014) (citing *ALT v. Conoco I*, 952 F. Supp. 2d at 1025 n.7). Despite the court's disagreement with *Elliott*, it "declined to ignore clear precedent[,]" dismissing "Plaintiffs' claims of implied duty to market" and refusing "to certify the question to the New Mexico Supreme Court." *Id.* (citing *ALT v. Conoco I*, 952 F. Supp. 2d at 1049; *ALT v. Conoco II*, 2013 WL 11549178 at *9–10).

"*Elliott Indus.* is binding on the Court, and it answers the question whether New Mexico law recognizes the marketable conditions rule in the negative." *ALT v. Conoco II*, 2013 WL 11549178, at *10 (citing *ALT v. Conoco I*, 952 F. Supp. 2d at 1049). "[T]he subsequent Supreme Court of New Mexico cases to which" Plaintiff cites does "not change the outcome." *Id.* "The proper procedure, the Court believes, is to let the issue proceed to the Tenth Circuit . . . ." *Id.* "[T]he Tenth Circuit—not this Court—is the appropriate judicial level to certify the issue to the Supreme Court of New Mexico."[4] *Id.* Plaintiff has offered no arguments that persuade this Court otherwise. The Court denies Plaintiff's motion with respect to the question regarding the marketable condition rule.

B.     **The Court will not certify Plaintiff's question concerning the NGPT.**

Plaintiff next asserts that the express language of the Natural Gas Processors Tax Act, which levies "a privilege tax on processors[,]" precludes Defendant from deducting a portion of

---

[4] The Court takes notice that Judge Johnson entered a judgment in *ALT v. Energen* in May, 2016, and the plaintiff has filed an appeal with the Tenth Circuit. *See ALT v. Energen I*, No. 13-CV-00909 WJ/CG, Docs. 185, 186.

the tax from Plaintiff's royalty payments. § 7-33-4(A).[5] (*See also* Doc. 15 at 7.) The current statutory language went into effect in 1998. *Blackwood & Nichols Co. v. N.M. Taxation & Revenue Dep't*, 964 P.2d 137, 141 (N.M. Ct. App. 1998) (citing 1998 N.M. Laws, ch. 102, §§ 1 to 8). Prior to the 1998 amendment, Section 77-3-4 provided:

> A. There is levied and shall be collected by the oil and gas accounting division of the taxation and revenue department, a privilege tax on processors for the privilege of engaging in the business of processing based on the value of their products. The measure of the tax shall be forty-five one-hundredths of one percent of the value of the products. . . .
>
> C. *Every interest owner is liable for this tax to the extent of his interest in the value of such products or to the extent of his interest as may be measured by the value of such products*.

*Id.* (quoting § 7-33-4) (emphasis added); *see also* N.M. Stat. Ann. 1978 § 7-33-4(C) (Repl. Pamp. 1995). The previous version of this statute made "[e]very interest owner" liable for the tax according to the owner's interest in the product. N.M. Stat. Ann. § 7-33-4(C) (Repl. Pamp. 1995). The legislature removed the language referencing "interest owners" in 1998, leaving liability sitting squarely on the shoulders of the processors. *See* 1998 N.M. Laws, ch. 102, §§ 1–8. Plaintiff asserts the legislature did not intend for processors to be able to shift responsibility for payment of the tax to interest owners, and Plaintiff believes the decisions in both *Blackwood* and *Amoco Production Co. v. New Mexico Taxation & Revenue Department* support his position. (Doc. 15 at 6–7 (citing *Blackwood & Nichols Co.*, 964 P.2d 137; *Amoco Prod. Co. v. N.M. Taxation & Revenue Dep't*, 74 P.3d 96 (N.M. Ct. App. 2003)).) Defendant asserts that *Elliott* also governs Plaintiff's question regarding the NGPT. (Doc. 21 at 6–7.)

---

[5] To the extent that the tax is simply another post-production cost, the Court addressed the Plaintiff's argument in Section III(A), as *Elliott* forecloses that argument for Plaintiff in this Court. The Court considers in Section III(B) whether the statute language specifically prohibits Defendant from passing the tax onto Plaintiff.

Judge Johnson addressed a similar question and found "[t]here is no language in [Section] 7-33-4 which suggests that the privilege tax cannot be shared with the royalty owner in the form of a royalty deduction in order to cover reimbursement to the processor who had to pay the tax." *Anderson Living Trust v. Energen Res. Corp.* (*ALT v. Energen II*), No. 13-CV-00909 WJ/CG, 2016 WL 2739122 at *5 (D.N.M. Feb. 18, 2016) (citing *Blackwood & Nichols Co.*, 964 P.2d at 141) (The "fact that [the] legislature substantially rewrote provisions of [the] natural gas processors tax statute, and in so doing deleted requirement subjecting all 'interest owners' to such tax, indicated legislative intent to modify the basis upon which the tax was levied, rather than to clarify existing law"). The Court agrees there is nothing in the language of the statute which prohibits processors from shifting all or part of the burden of the tax to royalty owners; the statute simply places responsibility of payment on the producers. *See* § 7-33-4(A). The Court finds support for this conclusion in *Exxon Corp. v. Eagerton*, 462 U.S. 176 (1983), where the United States Supreme Court construed an Alabama severance tax statute with a royalty-owner exemption provision that read: "[a]ny person who is a royalty owner shall be exempt from the payment of any increase in taxes herein levied and shall not be liable therefor." *Eagerton*, 462 U.S. at 179, 179 (quoting Acts 1979, No. 79-434, p. 687, § 1, Ala. Code § 40-20-2(d), as amended). The Supreme Court found that "[o]n its face this portion of the Act provides only that the legal incidence of the tax increase does not fall on royalty owners, *i.e.*, the State cannot look to them for payment of the additional taxes. . . . [T]he royalty-owner exemption nowhere states that producers may not shift the burden of the tax increase in whole or in part to royalty owners." *Id.* at 188–89. The statute at issue here has no language explicitly exempting royalty owners from the tax, nor does it prohibit processors from shifting the burden of the tax. *See id.*

Plaintiff offers no authority that would support his proposed construction. The cases Plaintiff cites in support are inapposite: both *Blackwood* and *Amoco Production Co.* refer to the change in statutory language after the 1998 amendments, but neither court goes so far as to hold that processors are prohibited from shifting the tax burden to royalty owners. In *Blackwood*, the court found that "the legislative intent in adopting Section 7-33-4 prior to the 1998 amendment was to subject interest owners to tax liability thereon 'to the extent of [their] interest' therein." 964 P.2d at 141. With the 1998 amendment, the court found the legislature "intended to modify the basis upon which the tax was previously levied." *Id.* In *Amoco Production Co.*, the court merely mentions that "the post-1998 law shifts responsibility for paying the NGPT from interest owners to processors." 74 P.3d at 98 (citing § 7-33-4(A) (1998); *Blackwood & Nichols Co.*, 964 P.2d at 141). Neither court made any findings about a processor's ability to shift the tax burden after 1998, nor about the legislative intent concerning an ability to shift the burden.

The Court finds it much more likely that the legislature modified the statute to streamline the process of collecting the tax. "In the context of the oil and gas industry, it is much more efficient for the state to collect the tax from a handful of processors than from numerous royalty and/or working interest owners." *ALT v. Energen II*, 2016 WL 2739122 at *5. "Instead of keeping track of all these owners and their respective ownership interests, the state need only look to the processor." *Id.* (citing *Amoco Production Co.*, 74 P.3d at 100 ("purpose of the tax is to tax the processing of gas")).

Plaintiff contends that if the legislature intended to make royalty interest owners responsible for a share of the tax, it would have expressly included them in the statutory language. (Doc. 22 at 3.) Plaintiff cites to a statute that imposes an oil and gas severance tax and makes every interest owner "liable for the tax to the extent of his interest in" the product. (*Id.* (citing § 7-29-

13

4(C)).) The Tenth Circuit has found, though, while the severance tax statute specifies that the interest owners are liable for a predetermined percentage of the tax (in an amount equal to each owner's interest in the product), the interested parties are free to contract for a "readjustment in the allocation of the tax burden . . . ." *Feerer v. Amoco Prod. Co.*, 242 F.3d 1259, 1264 (10th Cir. 2001) (discussing § 7-29-4-(C)). Plaintiff has demonstrated no reason interested parties would not enjoy the same freedom to shift the tax burden imposed by Section 7-33-4. Moreover, the scope of the severance tax statute encompasses "all persons having an interest in the products severed," *see* N.M. Code R. § 3.18.1 (LexisNexis 2000), while the NGPT is intended to be "a privilege tax on processors[,]" § 7-33-4(A); hence, the difference in how the tax is collected.

For the foregoing reasons, the Court finds it unnecessary to certify Plaintiff's question regarding the NGPT. Absent inclusion of tax payments in the marketable condition rule, foreclosed to this Court by *Elliott*, the Court finds that the parties can contractually share the tax burden. The Court makes no ruling on whether the parties have so contracted here.

    **C.**    **The case is not ripe for certification.**

In order to certify a question to the New Mexico Supreme Court, "the record [must] contain the necessary factual predicates to [the court's] resolution of the question certified, and it is clear that evidence admissible at trial may be resolved in a manner requiring application of the law in question." *Schlieter*, 775 P.2d at 710. The court's "answer must be determinative in that it resolves the issue in the case out of which the question arose . . . ." *Id.* Plaintiff set out certain facts in his motion to certify, but Plaintiff fails to succinctly lay out the relevant contract provisions. (*See* Doc. 15 at 2–3.) Further, Defendant disputes several of Plaintiff's factual assertions. (*See* Doc. 21 at 13–14.) Were the Court to certify Plaintiff's questions to the supreme court, any opinion would be advisory and would not necessarily dispose of the ultimate issues in this case.

IV.     Conclusion

The Court finds that certification of Plaintiff's questions to the New Mexico Supreme Court is unwarranted and denies Plaintiff's motion.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Certify Dispositive Questions of Law to the New Mexico Supreme Court (Doc. 15) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**