# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**GERALD ULIBARRI and**
**WHITE RIVER ROYALTIES, LLC,**

    Plaintiffs,

v.                                        No: 1:16-cv-215-RB-JHR

**SOUTHLAND ROYALTY COMPANY,**
**LLC,**

    Defendant.

**Consolidated for purposes of class certification with:**

**GERALD ULIBARRI,**

    Plaintiff,

v.                                        No: 1:18-cv-294-RB-SCY

**ENERGEN RESOURCES**
**CORPORATION,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

In this contract dispute over oil and gas royalty payments, the Court takes up the Parties' competing motions to exclude expert testimony in advance of a class certification hearing.[1] The main issue before the Court is whether consideration of how natural gas products are processed, transported, and sold after extraction from specific wells is relevant to the Court's determination of whether class certification is proper in this case.

---

[1] The relevant motions to exclude were filed and briefed prior to the Court's order consolidating *Ulibarri v. Southland Royalty Co., LLC*, 16cv0215, and *Ulibarri v. Energen Resources Corp.*, 18cv0294. (*See* 16cv0215, Doc. 155; 18cv0294, Doc. 87.) As the cases have now been consolidated for purposes of the class certification proceedings, the reasoning and rulings in this Memorandum Opinion and Order apply equally to both cases in this consolidated class certification proceeding. All documents cited herein refer to 16cv0215.

In Gerald Ulibarri's and White River Royalties, LLC's (Plaintiffs) Motion to Exclude the Proposed Opinion Testimony of Defendant's Expert Mark Lambert (Doc. 114), Plaintiffs argue that Mr. Lambert's opinions regarding well-specific natural gas quality and composition, post-production activities, and midstream gas processing are not "relevant to any issue related to class certification." (*Id.* at 5.) Defendant Southland Royalty Company, LLC (Southland) argues that it specifically sought Mr. Lambert's testimony because Plaintiffs' proffered expert in oil and gas royalty accounting, Donald Phend, offers his opinions on the same topics. In its conditional *Daubert* Motion to Exclude Testimony of Donald A. Phend, CPA (Doc. 125), Southland urges the Court to exclude Mr. Phend's testimony if it excludes Mr. Lambert's testimony. Having considered the submissions of the parties and relevant law, the Court finds that the testimony of both proffered expert witnesses is admissible at the class certification stage. The Court will thus **deny** Plaintiffs' motion to exclude Mr. Lambert's testimony and **deny as moot** Southland's conditional motion to exclude Mr. Phend's testimony.

## I.     Background[2]

### A. The Underlying Complaint and Proposed Class

Southland holds the lessee's interest in numerous oil and gas lease agreements under which it produces natural gas from "gas only" wells in New Mexico. (Docs. 99 at 3; 106 at 11.) Plaintiffs hold the lessor's interest in several such lease agreements. (Doc. 99 at 3–4.) They allege that, since January 1, 2015, Southland has been consistently underpaying royalties it owes on the sales proceeds of natural gas and related products that Southland produces pursuant to their lease agreements. (*See id.* at 8.) Plaintiffs argue that Southland has breached the lease agreements by

---

[2] The Court recites only that factual and procedural background necessary to resolve these motions. In the Court's prior ruling denying Plaintiffs' motion to exclude the testimony of Kris Terry (Doc. 151), the Court more fully summarized the procedural posture and factual background in the case, which it incorporates by reference herein.

engaging in a common method of calculating royalty payments that "(1) calculates a value for the royalties . . . that is substantially less than the sale proceeds received on the sale of gas, including residue gas, the natural gas liquid products, and condensate, which came from Plaintiffs' and the Class members' Southland Wells;" and also "(2) improperly deducts costs for gathering, compression, processing, [Natural Gas Processors Tax] . . . , natural gas liquids transportation and fractionation, and other costs and expenses." (*Id.*)

Plaintiffs seek to bring this action on behalf of a putative class including all individuals and entities who have been paid royalties by Southland at any time since January 1, 2015, and hold a lessor's interest in a lease agreement that contains one of four different types of royalty payment provisions.[3] (*See id.* at 1–2.) The four types of royalty provisions that delineate the proposed class include: "proceeds royalty provisions," "gross proceeds royalty provisions," "greater of market value or gross proceeds royalty provisions," and "gross proceeds without deduction of post-production costs royalty provisions." (*See id.*)

### B. Motion to Exclude Testimony of Mark Lambert

Southland has proffered the testimony of Mr. Lambert as a chemical engineering expert with decades of experience in the oil and gas pipeline and hydrocarbon processing industries. (*See* Doc. 114-6 at 4.) His experience, education, and training suggest expertise in the oil and gas industry, specifically in the engineering aspects of oil and gas production. (*See id.* at 41–46.) Mr. Lambert has experience in consulting regarding "oil [and] gas facilities including engineering, construction, contracts, operations [and] maintenance, and royalty matters." (*Id.* at 4.) Mr. Lambert's expert report "focuses on certain claims made by Plaintiffs and their designated

---

[3] Plaintiffs have given each type of royalty provision a short title, which Southland has also adopted for ease of reference. For a more detailed description of the exact royalty language contained in each type of provision, see the Court's March 15, 2019 Opinion. (Doc. 151 at 3–4.)

3

accounting expert, Donald A. Phend . . . ." (*Id.* at 3.) In particular, Mr. Lambert notes that his report responds to Mr. Phend's opinions "concerning the production conditions occurring at or near the well; the gathering, treating, processing, compression, and pipeline transportation operations (sometimes referred to as 'midstream' or 'post-production' activities); and the disposition of natural gas, condensate, and natural gas liquids ('NGL') at the well and at other locations." (*Id.*)

Mr. Lambert's report asserts that "there exist significant differences and variability in the Potential Class Wells due to widely varying facts and circumstances associated with each well[,]" differences which "have a significant impact with respect to evaluating the claims made by Plaintiffs on a class-wide basis and the ability of Plaintiffs to represent the Class." (*Id.* at 10.) Mr. Lambert opines that determining whether post-production costs have been properly deducted from a royalty payment requires an evaluation of various factors, including among others: the lease governing the well from which the gas was produced; the royalty language in the lease and whether it requires different payment obligations if the gas is processed; the processing activities at each well; and the midstream processing agreements applicable to each well, if any. (*Id.* at 11.)

Plaintiffs argue that these opinions are "factually and legally irrelevant" and should be excluded. (Doc. 114 at 4.) "None of the 325 Lease Agreements has any royalty provision which provide, in any respect, that the calculation and payment of royalties to the Lessors is dependent upon the quality or composition of the natural gas which is produced from the wells subject to those 325 Lease Agreements."[4] (*Id.* at 3.) According to Plaintiffs, the only information necessary to determine Southland's royalty payment obligations is "the dollar amount of proceeds received by Southland from the buyers on its sale of natural gas and natural gas liquids." (*Id.*)

---

[4] Plaintiffs often refer to the leases it has identified to define the putative class as "the 325 Lease Agreements." (*See, e.g.*, Doc. 106 at 2 ("[t]he named Plaintiffs and the Class claim that Southland has breached the lease agreements at issue ('the 325 Lease Agreements')").)

4

Southland counters that it specifically retained Mr. Lambert to offer his expert testimony "in response to the engineering-type opinions offered by Plaintiff[s'] expert Donald A. Phend[] . . . ." (Doc. 131 at 1.) Southland asserts that while Plaintiffs argue Mr. Lambert's opinions are not relevant to any class certification issues, their own expert, Mr. Phend, "raises in his report issues relating to gas production, gas quality and composition, and gas infrastructure in the San Juan Basin." (*Id.* at 4 (citing Doc 140-1 ¶¶ 18, 20–23, 52).) Accordingly, Southland argues that Mr. Lambert's testimony and expert report "directly address[] the facts put at issue by Plaintiffs' expert Mr. Phend[,]" and "have a tendency to make the facts related to the engineering-type issues raised by Mr. Phend more or less probable than such facts would be without the evidence." (*Id.*)

**C. Conditional Motion to Exclude Testimony of Donald Phend**

Mr. Phend is a Certified Public Accountant licensed in Colorado. (Doc. 140-1 ¶ 2.) He has been "continuously employed or engaged in oil and gas accounting and tax matters for over 35 years" and has "extensive experience reviewing gas revenue and gas plant accounting for production and valuation throughout the western United States." (*Id.*; *see also* Doc. 140-1 at 33–35.) Plaintiffs offer Mr. Phend's expert report and testimony to identify the "accounting methodology used by Southland to calculate . . . Class members' royalties with respect to the sale proceeds received on the sale of gas, including residue gas, natural gas liquid products, and condensate, and the treatment and calculation of these Post-Production Costs as they pertain to such royalty payments." (Doc. 140-1 ¶ 8.) Plaintiffs also asked Mr. Phend to "identity and quantify these Post-Production costs that were deducted from Ulibarri's, White River's, and the class members' royalty payments . . . ." (*Id.*)

Mr. Phend produced his initial report on November 2, 2018 (Doc. 140-1), and a supplemental report on December 5, 2018 (Doc. 140-2).[5] In his reports, Mr. Phend opines on "gas gathering, treatment, and/or processing" (Doc. 140-1 at 15 (capitalization altered from original)), including why gas processing is required for "much of the natural gas produced by Southland." (*Id.* ¶ 18.) He also opines that, "[h]owever, it appears that some of the gas produced by Southland was gathered, treated, and dehydrated without further processing in order to be acceptable for receipt into the interstate market pipelines." (*Id.*) Often prefacing his statements with phrases like "[i]n my experience" (*see, e.g.*, *id.* ¶ 23), Mr. Phend offers opinions on Southland's agreements with third-party gas processing companies and describes how residue gas, natural gas liquid products, and condensate are usually processed, transported, sold, and valued. (*Id.* ¶¶ 19–23.) Many of Mr. Phend's opinions, while rooted in accounting methodology, require an explanation of well conditions and natural gas quality during the different phases of production. (*See e.g., id.* ¶ 23 ("between the wellhead and processing plant inlet there is a fallout of heavy liquids, often known as condensate or drips[,]" and "[e]ven though this condensate volume is included in field fuel, and is being reimbursed by Southland to the royalty owners, the royalties are being paid at a much lower value based on residue gas prices, rather than the more valuable condensate product prices").)

Southland's conditional motion to exclude Mr. Phend's testimony begins by asserting that both Mr. Phend's and Mr. Lambert's expert testimony should be admitted and will be useful to the Court in deciding the class certification issue. (Doc. 125 at 1.) However, Southland argues that if the Court excludes Mr. Lambert's expert testimony responding to Mr. Phend's opinions, then the Court should "likewise exclude the related opinions of Plaintiffs' expert Mr. Phend" because he

---

[5] Mr. Phend's second report supplements his original opinions based on his "analysis of additional data[,]" but notes that "the opinions expressed in [his initial expert report] remain unchanged." (Doc. 140-2 at 2.)

"is not qualified as an expert to testify regarding the engineering type opinions included in his report." (*Id.* at 1–2.) Plaintiffs counter that the statements in Mr. Phend's expert report regarding well conditions and gas production are not opinions but "background facts which cannot be disputed" and "will assist the Court in understanding how the gas produced from the Class members' wells was treated, processed, and sold." (Doc. 140 at 1, 3.)

## II.     Legal Standards

### A. Legal Standard for the Admission of Expert Testimony

As part of its evidentiary gatekeeping function under Federal Rule of Evidence 702, the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (extending the *Daubert* standard for evaluating scientific expert testimony to "technical" and "other specialized" knowledge). This requires a two-step inquiry, first determining whether the proffered expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (quoting Fed. R. Evid. 702). Second, the Court must determine whether the proposed testimony "is sufficiently 'relevant to the task at hand[,]'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 597), and has "a reliable basis in the knowledge and experience of [the expert's] discipline[,]" *Daubert*, 509 U.S. at 592.

Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Under Rule 702, reports from experts . . . are admissible only if necessary to aid in the interpretation of scientific, technical, or other specialized facts[,]" *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 889 (10th Cir. 2006), but

7

"[d]oubts about whether an expert's testimony will be useful 'should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions.'" *Robinson v. Mo. Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quoting J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 702[02], p. 702–30 (1988) (internal citations omitted)). The Court has "wide latitude . . . in exercising its discretion to admit or exclude expert testimony[,]" *Bitler*, 400 F.3d at 1232, and in a bench trial or related proceeding where the Court sits as factfinder, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise . . . ." *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) (citation omitted).

### B. Legal Standard for Class Certification

The Parties have offered Mr. Lambert's and Mr. Phend's expert testimony to support their respective arguments regarding class certification. All parties seeking class treatment must show that the proposed class meets four prerequisites: (1) numerosity rendering joinder impracticable, (2) commonality of questions of law and fact, (3) typicality of the named plaintiffs' claims and defenses compared to those of the putative class members, and (4) adequacy of the named party to represent the entire class. *See* Fed. R. Civ. P. 23(a). Plaintiffs bring their motion for class certification under Rule 23(b)(3), which is proper when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Potential class members must also be objectively and easily ascertained. *See Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 254 (D.N.M. 2016) (collecting cases from various districts describing the "ascertainability requirement"). The party seeking class certification bears the burden of "affirmatively

demonstrat[ing] . . . compliance" with each required element in Federal Rule of Civil Procedure 23, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**III. Analysis**

**A. Mr. Lambert and Mr. Phend are qualified experts in their respective fields.**

As a threshold matter, the Court finds that both proffered experts are qualified by "knowledge, skill, experience, training, or education" to render opinions in the areas for which their testimony has been offered. *See* Fed. R. Evid. 702. Mr. Lambert is a qualified expert in engineering, construction, and royalty matters in the oil and gas industry. (*See* Doc. 114-6 at 41–46.) Mr. Phend is a qualified expert in oil and gas accounting and tax matters, and his experience qualifies him to opine on oil and gas revenue, accounting for production, and royalty valuation in the western United States. (*See* Doc. 140-1 at 2, 33–35.) As explained below, the Court will admit Mr. Lambert's testimony and thus need not take up Southland's conditional motion to exclude Mr. Phend's testimony based on lack of qualification to opine on engineering issues. Given that Mr. Phend's accounting expertise is specific to oil and gas production and he has decades of experience in the field, Mr. Phend's various statements regarding oil and gas production that inform his opinions on natural gas royalty accounting are admissible.

**B. How natural gas is extracted, transported, processed, and sold at the wells underlying the putative class is relevant to the class certification question.**

Though Plaintiffs argue that Southland "fails to explain to the Court how these facts or Mr. Lambert's opinions are even remotely relevant to class certification" (Doc. 135 at 2), the Court finds that Mr. Lambert's testimony is squarely in line with Southland's argument that the putative class does not meet the Rule 23 requirements for proper certification. Southland has explained clearly that it believes class certification is not proper because the leases that define the proposed class, and the wells from which Southland produces natural gas pursuant to those leases, require

9

royalties to be calculated differently based on the conditions at each well. (*See, e.g.*, Doc. 131 at 4 ("widely-varying facts and circumstances associated with each individual well influence whether the well produces gas that requires some or all post-production services, whether the gas produces NGLs or condensate, or whether the gas is 'marketable' in a particular form or at a particular location[,]" and "as a result of these differences, the basis for the royalty underpayment claims must be considered on a well-by-well basis. These facts are of consequence to the Court's consideration of the class certification requirements, for example, commonality, typicality, and predominance" (citation omitted)).)

The Court is well aware that Plaintiffs disagree. Plaintiffs believe that the question of whether deductions are permissible should be answered solely by analyzing lease provision language, not well conditions, and thus the relevant questions of law and fact are common to all leaseholders with similar lease provision language. (*See* Doc. 114 at 3.) This dispute will likely dominate the two-day class certification hearing. At the hearing, Southland is entitled to present testimony of its qualified expert, Mr. Lambert, on how gas production conditions may vary between wells connected to the putative class and whether such variation affects royalty calculations. Plaintiffs are entitled to rebut Mr. Lambert's testimony and rely on Mr. Phend's opinions regarding royalty accounting to make their case for class certification. The Court will be able to determine at the hearing what specific testimony is relevant to its certification decision and what testimony is not relevant. Further, the Parties may object at the hearing to any testimony that they feel oversteps the bounds of admissibility.

Asking the Court to exclude Mr. Lambert's testimony as irrelevant *before* ruling on the certification issue, however, is akin to asking the Court to adopt Plaintiffs' preferred contract interpretation before hearing the evidence and arguments on both sides. The case law that Plaintiffs

cite to argue that the Court must look only to the lease language itself in determining how royalties should be calculated is the proper subject of their motion for class certification and their counsel's legal arguments at the hearing. (*See* Doc. 135 at 3 (collecting New Mexico cases regarding oil and gas contract interpretation).) Disagreement over the law relevant to the Court's class certification decision is not, however, a strong argument for excluding the testimony of an expert witness.

**THEREFORE**,

**IT IS ORDERED** that Plaintiffs' Motion to Exclude the Proposed Opinion Testimony of Defendant's Expert Mark Lambert (Doc. 114) is **DENIED**;

**IT IS FURTHER ORDERED** that Southland's Conditional *Daubert* Motion to Exclude Testimony of Donald A. Phend, CPA (Doc. 125) is **DENIED AS MOOT**, and the Court will consider the opinion testimony of both Mark Lambert and Donald Phend on the issue of class certification.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**