IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERALD ULIBARRI and
WHITE RIVER ROYALTIES, LLC

        Plaintiffs,

v.                                  Case No. 1:16-cv-00215-RB-JHR

SOUTHLAND ROYALTY COMPANY, LLC

        Defendant.

**MEMORANDUM OPINION AND ORDER ON
PLAINTIFF GERALD ULIBARRI'S MOTION TO COMPEL[1]**

THIS MATTER comes before the Court on Defendant Southland's *Motion to Compel* [Doc. 89]. The Court, having considered the submissions, the relevant law, and being otherwise fully advised in the premises finds that Defendant Southland's Motion is not well taken and should be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Ulibarri filed his Class Action Complaint on October 16, 2015 in the Eleventh Judicial District Court in San Juan New Mexico, alleging that Defendant Southland Royalty Company, LLC (Southland) underpaid royalties to him and to other members of the putative class on natural gas produced by Southland from wells located in the state of New Mexico since January 1, 2015. [Doc. 1-1, ¶¶ 1-2]. Southland removed the action from state court on March 22, 2016.

---

[1] This Memorandum Opinion and Order is filed in *Ulibarri v. Southland Royalty Co., LLC*, 1:16-cv-00215-RB-JHR and not in the companion case *Ulibarri v. Energen Resources Corp.*, 1:18-cv-294-RB-SCY, as the instant Motion to Compel [Doc. 89] pertains only to discovery sought by Southland Royalty Co. and was filed prior to the Court's March 25, 2019, Order Consolidating Class Certification Proceedings [Doc. 155].

[Doc. 1]. The parties are engaged in discovery in advance of and pertaining to the class certification hearing set for September 9, 2019. [Doc. 47; Doc 121; Doc. 159].

At issue in the instant Motion are Southland's Interrogatory No. 4 and Request for Production No. 9 to Plaintiff Ulibarri which read:

> **Interrogatory No. 4:** Identify each Royalty Interest you own or have owned in any natural gas producing property. For each interest, state (1) the type of interest (i.e., royalty, overriding royalty interest, or unleased mineral interest), (b) the geographic location of the property by county and state, (c) the well name or number, (d) your percentage of interest, (e) the names of all payors, current and past, (f) the names of all operators, current and past (g) the name of any unit to which the interest is committed, (h) the dates of your ownership of such interests, (i) how the property was acquired, e.g., by gift, purchase, exchange, inheritance or devise, or any other method by which you acquired or claim to have acquired such interest, and if by multiple conveyances, separately identify each conveyance by grantor, grantee, date and percentage ownership conveyed, (j) the methodology used to calculate that interest, (k) the dates upon which you became aware of the methodology, (l) how you became aware of the methodology, (m) all social security numbers or taxpayer identification numbers under which you have received payments attributable to any mineral interest you claim to own, and (n) the total amount of royalties you received from each payor.
> ….
>
> **Request for Production No. 9:** With respect to Interrogatory Number 4, (a) all documents relating to the basis for paying royalties identified in Interrogatory 4, and the method for calculating such payments; (b) all contracts, agreements, and other instruments relating to your working interests; (c) all leases, division orders, unit agreements, and other agreements relating to your payment of Royalties; and (d) all documents relating to your payment of Royalty Interests, including samples of each type of check detail or monthly statement used in making such payments.

[Doc. 89, pp. 3-5].

Plaintiff Ulibarri objected to these discovery requests as overly broad as they are not limited in geographical or temporal scope. [Doc. 89-1, p. 5]. Plaintiff Ulibarri further objected on relevance grounds, asserting that the information sought is not relevant to the claims in this

litigation, which are based on Southland's New Mexico natural gas production since January 1, 2015, or to the class certification requirements set forth by Rule 23(a). [*Id.*].[2]

The parties attempted in good faith to resolve their discovery disputes. [Doc. 89-2, p. 1; Doc. 89-3, p. 1]. However, the parties were not able to come to an agreement relative to Southland's requests for "information about each royalty interest that [he] currently owns or has owned in *any* natural gas producing property," which Southland claims is relevant for purposes of class certification, and now seeks to compel. [Doc. 89, p. 3].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad discovery privileges."). Nonetheless, the Court is not required to permit the parties to engage in fishing expeditions in the hope of supporting their claims or defenses. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018).

Key considerations in determining the scope of permissible discovery include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

---

[2] As to Plaintiff Ulibarri's lease agreements which provided for payment of royalties by Southland based on its New Mexico natural gas production on and after January 1, 2015, Plaintiff Ulibarri asserted that Southland was in possession of such lease agreements and/or other information responsive to the discovery requests at issue and Southland does not contend otherwise. [Doc. 89-1, p. 5; Doc. 98].

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Punt v. Kelly Services*, 862 F.3d 1040, 1047 (10th Cir. 2017).

Parties may propound interrogatories and requests for production pursuant to Federal Rules of Civil Procedure 33 and 34, provided that such requests are within the scope of Rule 26(b). *See* Fed. R. Civ. P. 33(a); Fed. R. Civ. P. 34(a). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). A party may move to compel a response if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv). The party moving to compel discovery has the burden of proving the opposing party's answers were incomplete. *See Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976).

## III. ANALYSIS

### A. Discovery Relevant to Class Certification

The discovery permitted for purposes of class certification should be sufficiently broad that the parties have a fair and realistic opportunity to obtain evidence relevant to the requirements of Rule 23, yet not so broad that the discovery efforts presented an undue burden to the responding party. *See Soseeah v. Sentry Ins.*, 2013 WL 11327129, at *3 (D.N.M. Nov. 4, 2013) (citation omitted). Such "[d]iscovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." *Id.* "Notably, discovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party

can establish that the discovery is pertinent to the class certification requirements of Fed. R. Civ. P. 23." *Id.* at *5.

"[T]he party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met." *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) (quoted authority omitted). "Once a district court concludes the requirements of Rule 23(a) are satisfied, the court may certify a class if it finds the movant has also satisfied the conditions of either Rule 23(b)(1), (2), or (3)." *Id.* Thus, all classes must satisfy the following prerequisites under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"A party seeking to certify a class is required to show 'under a strict burden of proof, that all the requirements of Fed. R. Civ. P. 23(a) are clearly met.'" *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (quoted authority omitted). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

In the present case, Plaintiff Ulibarri alleges, on behalf of himself and the putative class, that Southland "breached [its] royalty agreements by failing to pay royalties based on the proceeds received on the sale of gas, including residue gas, natural gas liquids, and condensate from the putative class members' wells." [Doc. 89, p. 4]. Through the discovery requests at issue here, Southland seeks information regarding Plaintiff Ulibarri's knowledge and understanding of royalty payment language, custom and industry practice. [*Id.*, pp. 4-5]. According to Southland Plaintiff Ulibarri's "participation in and understanding of the natural gas industry, including leases and

5

royalty payments" is directly relevant to the certification of the putative class, specifically Rule 23(a)'s commonality, typicality, and adequate representation requirements. [*Id.*].

**B. Southland Has Not Shown That the Discovery Sought is Relevant to the Commonality, Typicality, or Adequacy of Representation Requirements**

**1. Commonality**

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Dukes,* 564 U.S. at 350. "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Their claims must depend upon a common contention, which must be of such a nature that it is capable of class wide resolution. *See id.* In other words, a determination of the truth or falsity of the common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

With respect to the commonality requirement, Southland argues, that the discovery at issue goes to whether there are common issues of law or fact common to the putative class. [Doc. 89, p. 5]. Southland cites *Elliott Indus. L.P. v. BP Amer. Prod. Co.*, 407 F.3d 1091, 1107 n.10 (10th Cir. 2005), for the proposition that the commonality requirement is less likely to be met for actions based on breach of contract claims because the circumstances surrounding the making of the contract and any relevant usage of trade, course of dealing, and course of performance are likely to differ for each putative class member, thus decreasing the likelihood of a common contention. [Doc. 89, p. 5].[3]

The Court does not dispute the authority cited by Southland which establishes that material differences in multiple contracts of a putative class or in the circumstances surrounding the

---

[3] To the extent that Southland argues that Plaintiff Ulibarri's experience and understanding of the natural gas industry outside the context of this litigation may have bearing on the circumstances surrounding the formation of Plaintiff Ulibarri's lease at issue here, such an argument is unavailing as Plaintiff Ulibarri asserts, and Southland does not refute, that he inherited the lease from his parents and was not a party to the original lease. [Doc. 95, p. 5; Doc. 95-3, pp. 2-3].

6

formation of those contracts may bear upon the class certification requirements. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (holding that class certification was not proper where the plaintiffs' claims arose from multiple different contracts which varied from year to year and from plaintiff to plaintiff and which contained *materially different contract language* (emphasis added)); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (holding that the named plaintiffs could not advance the interests of the entire class because each member's claim was materially different from the other members' claims such that a named plaintiff who proved his own claim would necessarily not have proved any other member's claim); *Elliott*, 407 F.3d at 1107, n. 10 (presuming that "pleading a breach of contract claim on behalf of approximately 10,000 royalty owners would have made class certification less likely."); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (holding that the district court abused its discretion in certifying a class by "glossing over the *striking differences in the material terms of the agreements*." (emphasis added)).

However, this analysis involves consideration of the contracts at issue in the litigation and an examination of the differences between them to determine whether any such differences are material, and whether despite any differences, there is a common contention central to the validity of each of the putative class members' claims. *See Dukes,* 564 U.S. at 350 (discussing a common contention as required to meet commonality in the context of class certification). Here, Southland states in conclusory fashion that Plaintiff Ulibarri's "experience with *other* contracts, which is the core of the discovery requests at issue here, will shed light on the question of commonality." [Doc. 89, p. 5 (emphasis added)]. However, it fails to explain how or why Plaintiff Ulibarri's experience with other contracts bears on whether there are material differences in the leases of the putative

members of the class in this litigation which would threaten the commonality of their claims. [*Id.*]. Moreover, none of the authority on which Southland relies in support of this argument involves an analysis of the potential relevance of third-party contracts which were not at issue in the cases at bar. *See Broussard*, 155 F.3d at 340; *Sprague*, 133 F.3d at 399; *Elliott*, 407 F.3d at 1107, n. 10; *Sacred Heart*, 601 F.3d at 1176.

### 2. Typicality

Typicality exists where the claims of the representative plaintiff "arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members." *Schwartz v. Celestial Seasonings, Inc*., 178 F.R.D. 545, 552 (D. Colo. 1998); *see Penn v. San Juan Hosp., Inc*., 528 F.2d 1181, 1189 (10th Cir. 1975) (typicality exists "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory"). To satisfy the typicality requirement, a class representative must possess the same interest and suffer the same injury from the same cause as the unnamed class member. *Rector v. City and County of Denver,* 348 F.3d 935, 949-50 (10th Cir. 2003). The interests and claims of the plaintiffs and class members need not be identical to satisfy typicality. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Provided the claims of the plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *See Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. "Thus, the conduct alleged by [the p]laintiff and the legal theory [he] advances needs to be shared by other class members in order to meet the typicality requirement." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 448 (D.N.M. 2007).

Like commonality, the typicality requirement focuses on the shared bases for the claims of the putative class. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, n. 13 (1982) (stating that the commonality and typicality requirements tend to merge, serving "as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").

In Southland's Motion it argues that Plaintiff Ulibarri's experience and understanding of the natural gas industry including leases and royalty payments is relevant to typicality in light of the differences between his lease, which serves as a basis for this litigation and those of the putative class members in this case. [Doc. 89, pp. 4-5; Doc. 101, p. 6]. Southland suggests that in order to meet the typicality requirement[4] Plaintiff Ulibarri must demonstrate that he possesses sufficient "knowledge and experience to advocate for putative class members whose lease language makes them factually or legally dissimilar…or whose royalty payments are calculated differently." [Doc. 101, p. 6].

This assertion is not supported by any applicable authority. Under Rule 23, typicality requires that the claims of the class representative and the putative class be based upon the same alleged conduct and legal theory. *See Rector,* 348 F.3d at 949-50; *Pueblo of Zuni*, 243 F.R.D. at 448. This inquiry does not require consideration of the class representative's knowledge or experience in the industry from which the claims are borne. Accordingly, the Court is not persuaded that the discovery sought is relevant to the typicality requirement.

---

[4] Southland makes nearly identical arguments regarding the commonality and adequacy requirements, which are addressed in those respective sections to the extent they are not addressed in this section. [Doc. 101, pp. 6-7].

### 3. Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." The adequacy requirement is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.2002). "It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent." *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463-64 (10th Cir. 1974). However, only "a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) (internal quotation marks and citation omitted).

Here, Southland does not argue that the discovery sought is relevant to potentially antagonistic or conflicting interests between Plaintiff Ulibarri and the members of the putative class. [*See generally* Doc. 89; Doc. 101]. Rather, Southland suggests that the discovery sought goes to Plaintiff Ulibarri's "knowledge and understanding of issues relevant to this litigation." [Doc. 101, p. 6]. In support of this contention, Southland cites 7A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1766 (3d ed. 1998), which provides that "[i]f the representative displays a lack of credibility regarding the allegations being made or a lack of knowledge or understanding concerning what the suit is about, then the court may conclude that Rule 23(a)(4) is not satisfied." [*See* Doc. 101, p. 7]. However, Wright & Miller go on to state, "*[b]ut* knowledge of all the intricacies of the litigation is not required and several courts have

10

found that *general knowledge of what is involved is sufficient*." 7A Wright & Miller, Federal Practice and Procedure § 1766 (emphasis added).

The inquiry into the knowledge of class representatives "is to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney." 7A Wright & Miller, Federal Practice and Procedure § 1766. While courts generally hold that a class representative must have working knowledge of the case, *see, e.g., Buford v. H & R Block, Inc.,* 168 F.R.D. 340 (S.D.Ga.1996), class certification will not be prevented solely on that basis unless the representatives "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987). Thus, "the threshold of knowledge required to qualify a class representative is low." *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012). "The important inquiry is whether the class representative has a working knowledge of the *instant action*." *J.B.D.L. Corp. v. Wyeth-Ayerst Labs. Inc.*, 225 F.R.D. 208, 216 (S.D. Ohio 2003) (emphasis added); *see id.* (holding that an executive's memory of an earlier lawsuit involving his employer had little or no bearing on whether the employer was an adequate representative in the lawsuit at issue).

Here, Southland maintains that Plaintiff Ulibarri's experience and understanding of the natural gas industry, including leases and royalty payments is relevant to his understanding the nature of his claim and the nature of the claims of the putative class members "who are factually dissimilar." [Doc. 101, p. 7]. According to Southland, one way to demonstrate that Plaintiff Ulibarri possesses sufficient information "or is otherwise invested in the interests of putative class members who are factually dissimilar to meet Rule 23's [adequacy] requirement…is to review his participation in the natural gas industry, including his other natural gas interests." [Doc. 101, pp. 6-7]. However, Southland has not articulated how Plaintiff Ulibarri's participation in the natural

gas industry, including his natural gas interests unrelated to this litigation, are relevant to his general understanding of the claims at issue here. Nor has Southland indicated that such participation in the natural gas industry would inform the Court's analysis of any potential conflict of interest between Plaintiff Ulibarri's interests and those of the putative class.

## IV. CONCLUSION

For the foregoing reasons, The Court finds that Southland has not demonstrated that Plaintiff Ulibarri's understanding of and participation in the natural gas industry, leases, and royalties, outside the context of the present case is relevant to the requirements for class certification. Accordingly, Defendant Southland's *Motion to Compel* [Doc. 89] is DENIED.

IT IS SO ORDERED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE